PATRICK KELLY, ADMINISTRATOR, *vs.* THE NEW HAVEN STEAMBOAT COMPANY.

Third Judicial District, Bridgeport, October Term, 1901.
TORRANCE, C. J., BALDWIN, HAMERSLEY, HALL and PRENTICE, Js.

Under the common-law rule that a master is not liable to his servant for injuries caused to the latter solely by the negligence of a competent fellow-servant, the test adopted in this State for determining who are fellow-servants is whether the duty violated was one resting upon the master, or solely upon the offending servant,—a test which is concerned mainly with the nature and character of the duty rather than with the comparative rank or grade of the servants involved.

If a corporation furnishes its employees a reasonably safe place to work in and reasonably safe appliances, it is not liable for an injury to one of its servants which is caused solely by the negligent failure of a fellow-servant to use such appliances.

The only way in which a master is required to guard against neglect to use the appliances he furnishes is to appoint a sufficient number of competent servants.

Argued October 29th, 1901—decided January 8th, 1902.

ACTION to recover damages for personal injuries resulting in the death of the plaintiff's intestate, brought to the Superior Court in New Haven County and heard in damages to the court, *Ralph Wheeler, J.;* facts found and judgment rendered for the plaintiff for $4,000, and appeal by the defendant for alleged errors in the rulings and findings of the court. *Error, judgment set aside and cause remanded.*

The material facts found are these: The defendant corporation, on the day of the injury, owned and ran the steamboat Continental, on which Kelly, the plaintiff's intestate, was a deck hand. On that day said boat arrived at its dock

in New Haven when a strong ebb tide was running. When this was the case it was the custom in docking the boat to turn it about by means of a hawser put out on the starboard side of the boat, passed around the stern, carried forward on the port side, and fastened to a post on the dock. This being done, upon reversing the engines, the hawser holding the stern, the bow would swing around. During this operation, to prevent the hawser from slipping from under the stern, the defendant had provided a beam of wood (hereinafter called a fender) which, being put out of a chockhole in the stern under which the hawser passed, effectually prevented such slipping.

On the day of the injury, while the boat was being turned about in the customary manner, but without using said fender, the hawser slipped and caused the injuries to Kelly described in the complaint. The sole cause of the slipping was the failure to use the fender. It was the duty of the mate to employ the deck hands, to receive orders from the captain to get ready the lines, and thereafter to see that the appliances were in readiness and in proper condition, that the hawser was put out and taken ashore and fastened to a pile on the wharf, and to give orders and directions to the deck hands in the performance of their duties. The boat was in command of a captain whose special duty it was to take charge of its navigation, and he did not assume the immediate direction or supervision of the deck hands. It was the duty of the deck hands to assist in docking the boat under the immediate orders of the mate; and it was the duty of the mate to determine, from the condition of the tide and the depth to which the boat was loaded, whether or not the fender should be used, and if it was to be used " to give an order to a deck boy to put out the same." It was not the duty of the deck hands to use the fender without express orders from the mate to do so. The use of the fender at the time in question was necessary for the reasonable safety of the deck hands, in the place where they were required to work, " and its proper use would have rendered the appliances used, and the method of docking, proper and

suitable." The fender was a beam of wood about three feet long and four or five inches in diameter. It was kept on the main deck loosely tied to the flagpole at the stern, and at the time of the accident was in its place ready for use.

At the time Kelly was injured he was in the exercise of due care, and at the place where he was ordered to be by the mate ; and the court finds that such place was " at that time an unsafe and dangerous place, and the defendant failed to furnish proper and suitable appliances to render the place safe, and the appliances then in operation by the defendant were unsafe and dangerous, by reason of the facts aforesaid."

Upon these facts the defendant, among other things, claimed that the injury to Kelly was caused solely by the negligence of a fellow-servant, and this claim, with others, the trial court overruled, and rendered judgment as on file.

*Edward H. Rogers*, for the appellant (defendant).

*James H. Webb* and *Arnon A. Alling*, for the appellee (plaintiff).

TORRANCE, C. J. The trial court has found that, legally speaking, the sole cause of the accident to Kelly was the negligent failure to use the fender; and one of the important questions in the case is whether the defendant was responsible to Kelly for that failure. It was so responsible, if in law the negligence of the mate was the negligence of Kelly's master, while it was not, if such negligence was that of Kelly's fellow-servant.

The common-law rule that a master is not liable to his servant for injuries caused to the latter solely by the negligence of a competent fellow-servant, is recognized as the settled law of this State. *Burke* v. *Norwich & W. R. Co.*, 34 Conn. 474; *Wilson* v. *Willimantic Linen Co.*, 50 id. 433; *Darrigan* v. *New York & N. E. R. Co.*, 52 id. 285; *Zeigler* v. *Danbury & N. R. Co.*, ibid. 543; *Griswold* v. *New York & N. E. R. Co.*, 53 id. 371; *Nolan* v. *New York, N. H. & H. R. Co.*, 70 id. 159. The rule seems plain enough in itself, but in applying it no universal, fixed and reliable principle, or test, for deter-

mining who are fellow-servants within its meaning, has been agreed upon. Different courts have adopted and applied different tests, and the natural result is conflicting decisions in the different jurisdictions, and a confused and unsettled state of the law of master and servant.

Speaking generally, two rules, applied as tests in questions of this kind, have obtained a wide acceptance. Under one, the test is whether the duty violated by the offending servant was one resting upon the master, or solely upon the offending servant; while under the other, the test is whether the offending servant, in what he did or omitted to do, was or was not *pro hac vice* the master. Under the first rule the test is mainly the nature and character of the duty violated by the offending servant. If it was a duty resting upon the master, the master, as a general rule, is liable to the injured servant for the negligence of the offending servant; if it was not such a duty he is not. Under this rule the rank or grade of the offending servant in the master's business, or the department of it in which he is employed, as compared with that of the injured servant, is not of primary importance in determining the master's liability.

Under the second rule, the test is mainly the relation of the offending servant to the master and to the injured servant. If in what he does he acts for and represents the master, and therefore *pro hac vice* is the master, then his negligence is the master's negligence. Under this rule the rank or grade of the offending servant in his master's business and the department in which he works, is regarded as of primary importance in determining the master's liability.

The first of these tests—the nature and character of the duty violated—is the one adopted in this State. This is the test applied in *Wilson* v. *Willimantic Linen Co.*, 50 Conn. 433, in *McElligott* v. *Randolph*, 61 id. 157 and in *Sullivan* v. *New York, N. H. & H. R. Co.*, 62 id. 209; it is also the one, if not in form, in fact at least, applied in *Darrigan* v. *New York & N. E. R. Co.*, 52 Conn. 285, *Gerrish* v. *New Haven Ice Co.*, 63 id. 9, and in *Sprague* v. *New York & N. E. R. Co.*, 68 id. 345; for in each of these cases the duty violated

by the offending servant was held to be a duty resting upon the master.

In the case at bar the trial court has found that the master violated its duty to furnish Kelly a reasonably safe place to work, and reasonably safe appliances; but this conclusion is based entirely upon the fact that the fender was not used. With that in use, it is found that the place and appliances were reasonably safe. The controlling question in the case is whether it was the duty of the defendant to see that the fender was used. We think it was not. It had furnished a sufficient fender, and a place in which it could be used, and it kept the fender in a proper and convenient place at all times ready for use. In doing this it had performed its full duty in this respect. It was not obliged to be there every time the boat was docked, to use the fender, or to see to it that it was used. It was the duty of the defendant to furnish the appliances: it was the duty of the servants to use them when necessary. When the owner of a vessel furnishes proper guardrails, gangplanks and hatchway covers for the use of the crew, we know of no case that has gone so far as to hold that he is liable to one of the crew, for the negligence of a fellow-servant, in leaving the guardrail down, the hatchway uncovered, or the gangplank insecurely fastened. Such negligences are incidental to the use by the crew of the appliances furnished by the master; and the only way the master is required to guard against them is to appoint a sufficient number of competent servants. Our conclusion is that the court below erred in holding that the defendant was liable for the negligence of the mate upon the facts in this case.

The following are a few of the many cases outside of our own reports which might be cited in favor of the conclusion reached in this case. *Benson* v. *Goodwin*, 147 Mass. 237; *Kalleck* v. *Deering*, 161 id. 469; *Geoghegan* v. *Atlas Steamship Co.*, 146 N. Y. 369; *McLaughlin* v. *Camden Iron Works*, 60 N. J. L. 557; *Sofield* v. *Guggenheim Smelting Co.*, 64 id. 605.

There is error, the judgment is set aside and the cause remanded to be proceeded with according to law.

In this opinion the other judges concurred.